IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                    Case No.  21-10013-02-JWB
                                                                23-1065-JWB

MARIO TREJO-CHAVEZ,

Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion to vacate sentence pursuant to 28 U.S.C. § 2255.  (Doc. 104.)  The motion is fully briefed and ripe for decision.  (Doc. 108.)[1]  The motion is DENIED for the reasons stated herein.

### I.    Procedural History

On February 23, 2021, Defendant was charged by way of indictment with distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  (Doc. 1.)  That charge carried a statutory mandatory minimum penalty of ten years' imprisonment upon conviction.  21 U.S.C. § 841(b)(1)(A)(viii).  Defendant's brother, Rigoberto Trejo-Chavez, was also charged on that same count along with two additional counts of distribution and one count of use of communication device to facilitate a controlled substance felony in violation of 21 U.S.C. § 843(b).  (Doc. 1.)  Defendant was initially placed on bond.  On November 9, 2021, Magistrate Judge Gale summoned Defendant to appear after receiving a report that Defendant had violated several conditions of his bond.  (Doc. 46.)  Defendant admitted to the violations at a hearing.  Notably, Defendant was arrested by the Newton Police Department for possession of cocaine,

---

[1] Defendant did not file a reply and the time for doing so has now passed.

driving under the influence, transporting an open container, driving while suspended, and driving without an interlock device.  Defendant had also diluted eight urine samples since he had been on supervision.  Defendant's bond was revoked and he was placed in custody.

On February 22, 2022, Defendant pleaded guilty to a superseding information charging him with distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  (Doc. 75.)  That charge carries a statutory minimum of five years' imprisonment. According to the plea agreement, Defendant admitted the following facts related to the offense:

> On or about July 29, 2019, co-defendant Rigoberto Trejo-Chavez made arrangements to sell methamphetamine to a KBI Senior Special Agent, who was acting in an undercover capacity.  Rigoberto Trejo-Chavez explained, however, that he was out of town, but that his brother would help the agent.  Trejo-Chavez's brother was later identified as Mario Trejo-Chavez.   Rigoberto Trejo-Chavez directed the agent to a bar in Wichita.
>
> Once the agent arrived, Mario Trejo-Chavez let him into the establishment, where the undercover agent was provided 16 individual wrapped baggies containing approximately one ounce each of methamphetamine.   The undercover agent weighed each baggie separately in Mario's presence and $4,000 was counted and given to Mario for the drugs. Mario Trejo-Chavez worked with his brother, Rigoberto Trejo-Chavez, to set up the transaction.  Mario Trejo-Chavez knew he was selling methamphetamine and intended to do so.
>
> The substance later tested positive for methamphetamine, which is a controlled substance.  The methamphetamine was weighed and found to be 443.54 grams, and 349.5 grams of actual methamphetamine.

(Doc. 75 at 2.)

The court directed the United States Probation Office to prepare a presentence investigation report (PSR) using the United States Sentencing Commission Guidelines Manual ("guidelines").  In the PSR, Defendant's base offense level was calculated as 32 based on the sale of at least 150 grams but less than 500 grams of actual methamphetamine.  (Doc. 86 ¶ 47.)  Three points were deducted for acceptance of responsibility.  (*Id.* ¶¶ 54–55.)  Defendant's total criminal history score was three, which established a criminal history category of II.  (*Id.* ¶ 67.)  Defendant's prior

convictions included two counts of driving while intoxicated, two counts of driving under the influence, one count of minor in consumption, and driving while his license was suspended. (*Id.* ¶¶ 60–65.)

The total offense level and criminal history resulted in an advisory guidelines sentencing range of 97 to 121 months' imprisonment. (*Id.* ¶ 102.) There were no objections to the PSR. On May 16, 2022, the court conducted a sentencing hearing. Pursuant to the plea agreement, the government recommended that the court sentence Defendant at the low end of the guidelines range. Defendant also requested a sentence at the low end of the range.

In reviewing the sentencing factors, the court noted that the case involved the distribution of approximately one pound of methamphetamine. The court recognized the parties' request and stated that the undersigned might ordinarily be inclined to agree to a sentence at the low end but that this case was different due to Defendant's conduct on bond. The court found significant Defendant's bond violations that showed he was not compliant on bond and he was arrested for serious crimes, including possession of cocaine, failure to have an interlock device, and driving under the influence. (Doc. 107, Sent. Tr. at 7–10.) This criminal conduct was significant given his criminal history which includes several convictions for driving while intoxicated. After a review of all the factors, the court sentenced Defendant to 105 months. (Doc. 90.)

Defendant did not file a direct appeal. Defendant timely moved to vacate his sentence under 28 U.S.C. § 2255 on the basis that his counsel was ineffective due to various reasons.

## II.    Standard

Section 2255(a) of Title 28 of the U.S. Code provides in part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United

States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." Unless the motion and the record of the case conclusively show the prisoner is entitled to no relief, the court must promptly grant a hearing. 28 U.S.C. § 2255(b). However, if it plainly appears from the motion, any attached exhibits, and the record that the moving party is not entitled to relief, the judge must dismiss the motion. Rule 4(b), Rules Governing Section 2255 Proceedings. *See United States v. Santiago*, No. 19-10055-JWB, 2021 WL 663201, at *3 (D. Kan. Feb. 19, 2021).

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, 586 U.S. 357, 363 (2017) (citation omitted.) "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694

## III. Analysis

### A. United States v. Smith

Defendant argues that his counsel was ineffective for not arguing that he was eligible for a variance under *United States v. Smith*, 27 F.3d 649, 651 (D.C. Cir. 1994) based on the differential treatment he would receive while incarcerated because of his deportable alien status. Defendant

argues that because he is a deportable alien he is unable to be assigned to a community corrections center by the Bureau of Prisons and also ineligible for some other programs while incarcerated. In *Smith*, the court held that such differential treatment was a mitigating factor that the court could consider when fashioning a sentence. Notably, *Smith* held that "[f]or a departure on such basis to be reasonable the difference in severity must be substantial and the sentencing court must have a high degree of confidence that it will in fact apply for a substantial portion of the defendant's sentence." 27 F.3d at 655. Defense counsel has submitted an affidavit in which he attests that he did not seek such a variance because he did not have information that would lead him to believe that Defendant would meet the standard set forth under *Smith*. (Doc. 108-1 at 2.) Notably, defense counsel, who is experienced and has appeared in a number of matters over the years, has never argued for a *Smith* variance. (*Id.*) Further, defense counsel attests that he did not seek a variance as that could jeopardize the government's agreement to recommend a sentence at the low end of the guidelines. Defense counsel believed that this recommendation was more beneficial than to argue for a departure. (*Id.* at 1.)

Defendant fails to point to any authority in this circuit in which a court has found that counsel is ineffective for failing to request such a variance or that the government is bound to recommend a departure. *See United States v. Acevedo*, No. 00-3143-DES, 2000 WL 764563, at *2–3 (D. Kan. May 26, 2000). Defendant further fails to show that such alleged differential treatment is substantial and that it would apply to a substantial portion of his sentence. Rather, he just generally argues that he would not be entitled to certain programs.

Further, had the government recommended a reduction in sentence, the court would not have granted the variance. As evidenced by the record, the court declined to sentence Defendant to the low end of the range due to the seriousness of the offense and Defendant's conduct while on

bond.  Therefore, he cannot establish that such failure to request a variance was prejudicial.  *See*

*Strickland*, 466 U.S. at 687 (To demonstrate that "counsel's assistance was so defective as to

require reversal of a conviction . . . the defendant must show that the deficient performance

prejudiced the defense.")

The record shows Defendant is not entitled to relief on this ground.

**B.  Safety Valve**

Next, Defendant argues that his counsel was ineffective for failing to request a downward

departure under the safety valve provision.  (Doc. 104 at 21–22.)  In response, the government

argues that Defendant was not eligible for the safety valve provision because he was not truthful

with the government.  (Doc. 108 at 12–14.)  Notably, defense counsel has submitted an affidavit

in which he attests that he believed that Defendant did not qualify for the safety valve provision

because he believed that Defendant had not been truthful with the government.  Further, defense

counsel did not seek any downward variance or departure because he did not want to jeopardize

the plea agreement in which the government only agreed to request a low end guideline sentence

if Defendant did not seek a downward variance or departure.  (Doc. 108-1 at 1–3.)

Turning to the merits, "[s]afety valve relief refers to statutory and guideline authority for

the sentencing court to sentence beneath a statutory mandatory minimum sentence." *United States*

*v. Illescas*, No. 04-20120-JWL, 2006 WL 897604, at *2 (D. Kan. 2006) (citation omitted).  If a

defendant meets certain criteria, including "truthfully provid[ing] to the Government all

information and evidence the defendant has concerning the offense" before sentencing, a defendant

would be entitled to a two-level reduction in his base offense level, even if this results in a sentence

below the statutory mandatory minimum.  18 U.S.C. § 3553(f)(1)-(5); *see also* U.S.S.G. §§

2D1.1(b)(18) and 5C1.2.  Notably, the statutory criteria with respect to the safety valve provision

changed with the enactment of the First Step Act. *See Mays v. United States*, No. 5:19-CR-34-2FL, 2022 WL 16556028, at *4 (E.D.N.C. Oct. 31, 2022). Prior to the change, a defendant could not have more than 1 criminal history point to qualify for safety valve relief. After the change, a defendant cannot have more than 4 criminal history points. *See* 18 U.S.C. § 3553(f)(1). The sentencing guideline safety valve provision, however, has not been updated to reflect the statutory change. *See* U.S.S.G. § 5C1.2.2. As a result, Defendant would not meet the guideline requirement because he has three criminal history points. However, the court could consider a downward variance in cases where a defendant meets the statutory requirements as to criminal history. *See Mays*, 2022 WL 16556028, at *6 ("The Sentencing Commission further emphasizes that any potential two-level reduction that may be granted would be at the court's discretion, and considered a variance rather than a mandatory two-level reduction." (citing U.S. Sent'g Comm'n, Off. of Educ. & Sent'g Prac., Which one do I follow?, *ESP Insider Express Special Edition, First Step Act* (Feb. 2019), at 6)).

Although the government does not address this issue, it is important to note that had Defendant qualified for safety valve under the revised statute, he would not have been entitled to a two-point reduction under the guidelines due to his criminal history score. Rather, he had to request a variance under the safety valve provision. *Id.* Therefore, to the extent Defendant asserts his counsel was ineffective for failing to request a two point deduction under the guideline provision, such a claim fails. *See id.* at 7.

Turning to the merits, Defendant argues that he was entitled to a downward variance because he met the safety valve criteria under the statute, including that he truthfully provided all information regarding the offense to the government. The government disputes this assertion, relying on defense counsel's representations and concluding that Defendant was not truthful in the

information he provided.  Here, Defendant has the burden to show that he has satisfied each criteria under the safety valve provision.  *United States v. Contreras-Castellanos*, 191 F. App'x 773, 776–77 (10th Cir. 2006).  Defendant's conclusory statements in his petition fail to show that he truthfully provided any information or evidence to the government prior to the sentencing hearing.  Under § 5C1.2(a)(5), the district court "must determine the quality and completeness of all information furnished to the government by [d]efendant."  *United States v. Gama–Bastidas*, 142 F.3d 1233, 1242 (10th Cir. 1998).  Defendant merely asserts that he was truthful to the government.  Defendant fails to specifically identify what information he told to the government regarding the offense charged.  Rather, the only information concerning the offense is what is set forth in the plea agreement.  Further, defense counsel has attested that Defendant was not truthful with the government based on his involvement in the case.  Based on that belief, defense counsel did not move for relief under the safety valve provision.

Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."  *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  Here, the court finds that counsel's decision not to seek a safety valve downward variance due to his belief that Defendant was not truthful with the government is not completely unreasonable.  Rather, it is reasonable given defense counsel's obligation of candor to the court.  Further, there is nothing in the record to support Defendant's conclusory statement that he was truthful with the government or that he provided all the information concerning the charged offense to the government.  Accordingly, Defendant cannot demonstrate his counsel's performance was deficient in not

seeking a safety valve reduction for which he was not eligible. *See United States v. Quintana Torres*, No. 17-10035-03-EFM, 2020 WL 7056095, at *4 (D. Kan. Dec. 2, 2020) (finding that the petitioner could not show deficient performance with respect to the safety valve provision when the government asserted that he was not truthful in his disclosure).

Further, Defendant cannot demonstrate prejudice as he cannot show with a reasonable probability that but for his counsel's alleged error in failing to ask for a safety valve variance that the result would have been any different. In this case, both defense counsel and the government asked the court to give Defendant a sentence of 97 months, at the low end of the guidelines. The court declined to give a low end sentence and instead sentenced Defendant to 105 months noting that a mid-range guideline sentence was appropriate due to Defendant's conduct in the case and his conduct while on bond. Defendant cannot show that had his counsel asked for a safety valve variance, which would have resulted in an even lower sentence than requested by defense counsel, that the court would have granted it. Therefore, Defendant cannot show with reasonable probability that the court would have granted a variance based on the safety valve provision.

### C.  Minor Role

Defendant argues that his counsel's performance fell beneath the standard of care because he failed to argue that Defendant was entitled to a reduction for a minor role in the offense. Under § 3B1.2(b) of the guidelines, a defendant's offense calculation is decreased by two levels if the defendant was a minor participant in the criminal activity. Defendant argues that he was a minor participant because the facts showed that his co-Defendant, Rigoberto Trejo-Chavez, was the individual responsible and that he was only receiving orders from Rigoberto and not working on his own. (Doc. 104 at 24.) The government argues that Defendant's conduct does not justify a finding that he was a minor participant. Further, defense counsel's affidavit states that he did not

9

raise this issue at sentencing because he did not believe that the facts supported a finding that Defendant was a minor participant.  (Doc. 108-1 at 3.)

The minor participant inquiry must "focus upon the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense." *United States v. Salazar–Samaniega*, 361 F.3d 1271, 1277 (10th Cir. 2004).  It is Defendant's burden to establish by a preponderance of the evidence that he is entitled to an offense reduction under § 3B1.2.  *United States v. Ayers*, 84 F.3d 382, 383 (10th Cir. 1996).

There is nothing in the record that would have supported an argument that Defendant was a minor participant in the conduct charged; rather, the facts admitted by Defendant show that he was at least as culpable as the average participant in the offense.  Contrary to Defendant's assertion, the facts show that Defendant "worked with his brother, Rigoberto Trejo-Chavez, to set up the transaction."  (Doc. 75 at 2.)  Further, Defendant "knew he was selling methamphetamine and intended to do so."  (*Id.*)  Defendant let the undercover agent into the bar, where he provided him with "16 individual wrapped baggies containing approximately one ounce each of methamphetamine."  (*Id.*)  These admitted facts clearly contradict Defendant's claim that he was just doing what his brother told him to do.  The facts state that Defendant "worked with his brother" to set up the transaction.  Further, Defendant completed the transaction by selling almost one pound of drugs to the agent.  Therefore, he is at least as culpable as his brother with respect to the offense he pleaded guilty to.  *See* U.S.S.G. § 3B1.2 cmt. n.3(A) (noting the guideline applies to "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity").  Although Rigoberto was charged with additional acts of distribution in this case, the charge at issue here is the one in which Defendant had a direct role and directly completed the sale transaction.  The record does not support

Defendant's claim that he was merely doing what his brother told him to do and, as a result, that he was entitled to an adjustment for being a minor participant.

Defendant cannot show that his counsel provided constitutionally deficient representation by failing to argue for a downward adjustment in his offense level under § 3B1.2. Therefore, Defendant is not entitled to relief on this ground.

### D.  Acceptance of Responsibility

Defendant argues that his attorney provided ineffective assistance of counsel by failing to argue that he should receive an additional one-point reduction for acceptance of responsibility. (Doc. 104 at 25.)  Defendant's argument lacks merit.  The record shows that the extra one point for acceptance of responsibility was applied to the calculation.  (Doc. 86 ¶¶ 54–55.)  Therefore, Defendant is not entitled to relief on this ground.

### E.  Weight and Purity

Next, Defendant argues that his counsel was ineffective for not challenging the drug weight and purity under the confrontation mandates of *Bullcoming v. New Mexico*, 564 U.S. 647 (2011). In *Bullcoming*, the Court held that when a forensic laboratory report is used as evidence against a defendant during trial, the Confrontation Clause gives the accused the right to cross-examine the scientist who prepared the forensic laboratory report rather than a different scientist from the same office.  564 U.S. at 652.  *Bullcoming* is not applicable here because Defendant entered a guilty plea.

Defendant further asserts that his counsel was ineffective for failing to argue that the drugs were counted and calculated as "ice" under the guidelines when no proof existed to substantiate those drugs were ice, asserting that all drugs should be classified as a mixture because the

indictment fails to set forth the actual quantities, and for failing to challenge the drug weight and purity.  Defendant's arguments lack merit.

First, the plea agreement specifically identified the amount of actual methamphetamine as 349.5 grams.  (Doc. 75 ¶ 2.)  The drugs were sent to the KBI laboratory and it was determined that the net weight was 443.54 grams with 78.8% purity or 349.5 grams.  (Doc. 86 ¶ 26.)  The PSR then calculated the sentence based on the amount of actual methamphetamine.  (*Id.* ¶ 47) ("The defendant was held accountable for 349.5 grams of methamphetamine actual. Utilizing the drug quantity table at USSG § 2D1.1(c)(4), at least 150 grams, but less than 500 grams of methamphetamine actual, establishes a base offense level of 32. USSG § 2D1.1(a)(5).") Therefore, his sentence was not based on the calculation of the drugs as a mixture or ice and the superseding information accurately charged a violation of distribution of 5 grams or more of methamphetamine.

Next, Defendant argues that his counsel should have challenged the drug weight and purity. Defendant, however, fails to make any showing that the laboratory results were improper.  Defense counsel attests that he had no basis to challenge the weight and purity of the drugs and, therefore, did not do so.  (Doc. 108-1 at 3.)

The allegations in the petition fail to show that counsel's representation fell below an objective standard of reasonableness with respect to the drug weight and purity.  Further, Defendant fails to show that if there had been a challenge, that there was a reasonable probability that the outcome would have been different. *See United States v. Morgan*, No. 14-20068-04, 2018 WL 3416297, at *4 (D. Kan. July 13, 2018) (rejecting similar claim on the basis that the petitioner had failed to show that the drug amounts were improper).

### F.  Constructive Amended Indictment

Finally, Defendant argues that defense counsel was ineffective for not challenging a "constructive amended indictment." (Doc. 104 at 30.) Defendant's argument lacks merit because he pleaded guilty to a superseding information and did not get convicted by a jury. *See United States v. Koerber*, 10 F.4th 1083, 1116 (10th Cir. 2021), *cert. denied*, 143 S. Ct. 326 (2022) ("A constructive amendment occurs when the district court's instructions and the proof offered at trial broaden the indictment.")

## IV.    Conclusion

Defendant's motion to vacate or correct sentence under 28 U.S.C. § 2255 (Doc. 104) is DENIED.

An appeal from a final order on a § 2255 may not be taken absent a certificate of appealability, which may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  The court concludes Defendant has failed to make such a showing and accordingly a certificate of appealability is DENIED.

IT IS SO ORDERED.  Dated this 5th day of October, 2023.

___s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE